UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KEVIN J. JOHNSON,

                                Plaintiff,

v.                                                        9:12-CV-0210
                                                         (DNH/TWD)

BRIAN FISCHER, HAROLD H. GRAHAM,

                                Defendants.
_____

APPEARANCES:                                                   OF COUNSEL:

KEVIN J. JOHNSON, 98-B-0132
Plaintiff *pro se*
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

HON. ERIC T. SCHNEIDERMAN                       CATHY Y. SHEEHAN, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

# REPORT-RECOMMENDATION

      This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Kevin J. Johnson alleges that he was exposed to bird feces, mold, and dangerously high levels of tobacco smoke at Auburn Correctional Facility. (Dkt. No. 11.) Currently pending before the Court are separate motions by Defendant Superintendent Harold H. Graham and Defendant Commissioner

of the New York Department of Corrections and Community Supervision Brian Fischer to dismiss the amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 20 and 31.) For the reasons that follow, I recommend that Defendant Fischer's motion be granted with leave to amend and Defendant Graham's motion be denied.

I.  BACKGROUND

In the operative complaint, Plaintiff alleges that he has been exposed to dangerously high levels of cigarette and other tobacco smoke for "several years" at Auburn Correctional Facility. (Dkt. No. 11 at 2.)[1] Plaintiff alleges that officers, inmates, and civilian staff all smoke, creating a "network of smoker[s] that stick together [so] there is nothing being done to stop indoor smoking." *Id*. Plaintiff alleges that he "constantly encounter[s] cloud[s] of smoke in just about every building in [the] facility," including the industry building, the cell block area, and the school building. *Id*. at 2-3.

Plaintiff alleges that the clouds of smoke are so prevalent that the "facility can not say that it is unaware of the disregard for the no smoking indoors policy." *Id*. at 3. Plaintiff alleges that he filed a grievance regarding the issue, appealing the initial decision against him to Defendant Superintendent Harold H. Graham and ultimately to the Central Office Review Committee ("CORC"). *Id*.

Plaintiff alleges that beginning on July 31, 2011, he was housed in a cell on the ground floor of the facility. *Id*. Plaintiff alleges that his cell was ten feet away and directly across from

---

[1] References to page numbers in the Amended Complaint refer to the page numbers assigned by the Court's electronic filing system.

the heating system, which was covered in bird feces. *Id*. Plaintiff alleges that the wire gates of the upper tiers were covered in mold. *Id*. Plaintiff attempted to clean those areas himself. *Id*.

Plaintiff, who is a diabetic, researched the issue and learned that feces and mold are particularly toxic to diabetics. *Id*. at 3. Plaintiff filed a grievance, which he appealed to CORC, regarding the feces and mold. *Id*. Thereafter, the facility attempted to clean the area. *Id*. Plaintiff alleges that:

> the unskilled clean up attempts are proving to create a greater hazard: the feces is being washed down into the heating element cover, and soaked into the heating element which is released it into the air with the heat, and the mold was dry brushed off the wire gates sending a shower of mold spores into the air, not to mention the mold that's covering the walls, and the air circulating unit covers, that's actually blowing mold spores around every time it's turned on.

*Id*. at 3-4.

Plaintiff alleges that being exposed to smoke, mold, and feces has caused him chest congestion, trouble breathing at night, allergies, nasal problems, persistent cold like symptoms, and heavy yellowish mucus in his throat in the mornings. *Id*. at 4. Plaintiff alleges that the "need for clean indoor air is well known . . . however the staff here continues to smoke indoors and the use of untrained inmate[s] to clean the feces and mold is truly creating a greater health risk, by creating a greater exposure." *Id*.

Plaintiff alleges that Defendants "were and are aware of the fact that failure to properly enforce the no smoking indoor policy through[]out this facility and failing to properly clean and maintain the living areas to minimize air borne toxins poses a seriously dangerous health hazard to the plaintiff . . . ." *Id*. at 5. Plaintiff further alleges that Defendants have violated various New

3

York state clean air laws,[2] placing Plaintiff's health at risk. *Id*. Plaintiff alleges that Defendants violated his Eighth Amendment rights. *Id*. Plaintiff requests declaratory and injunctive relief, compensatory damages, punitive damages, and costs. *Id*. at 6.

Defendants Fischer and Graham now move separately to dismiss the complaint. (Dkt. Nos. 20 and 31.) Plaintiff has opposed the motions. (Dkt. Nos. 30 and 33.)

## II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

---

[2]     It is unclear which laws, specifically, Plaintiff alleges that Defendants violated. The complaint refers to "New York State Indoor Clean Air Act (Public Health Law, article 13-B), and New York State Public Health Law § 2 Article 13 (11-A) . . . ." (Dkt. No. 1 at 5.) New York Public Health Law Article 13-B is titled "Regulation of Overnight, Summer Day, and Traveling Summer Day Camps for Children." New York Public Health Law Article 13, Title XI-A created a New York State Toxic Mold Task Force.

4

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III. ANALYSIS

### A. Defendant Graham

Defendant Graham moves to dismiss the claims against him. (Dkt. No. 31.) Defendant Graham argues that the complaint fails to allege facts plausibly suggesting that he was personally involved in any alleged constitutional violation. (Dkt. No. 31-1 at 4-5.) For the reasons discussed below, I find that the complaint sufficiently alleges Defendant Graham's personal involvement.

Under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some tangible connection between the unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). If the defendant is a supervisory official, a mere linkage to the unlawful conduct through the prison chain of command (i.e., under the doctrine of

respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam). In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

Rather, supervisory personnel may be considered personally involved if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[3]

Construed broadly, the operative complaint alleges that Defendant Graham is personally involved because he denied Plaintiff's grievances. (Dkt. No. 11.) The Second Circuit has noted in dicta that it is "questionable whether an adjudicator's rejection of an administrative grievance would make him liable for the conduct complained of . . . ." *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). District courts in the Second Circuit have struggled to answer this question. *Burton v. Lynch*, 664 F. Supp. 2d 349, 360 (S.D.N.Y 2009) (collecting cases). The *Burton* court

---

[3] In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court ruled that where the underlying constitutional claim is a claim of intentional discrimination, a supervisory official's liability must be judged by the official's purpose rather than the official's knowledge of subordinates' actions or policies. The Second Circuit has not yet issued a decision discussing *Iqbal*'s effect on the *Colon* categories. Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories. *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases). I will assume for the purposes of this motion that *Colon* remains good law.

noted that district courts have found personal involvement based on denying a grievance where (1) the superintendent undertakes some kind of investigation into the initial denial; (2) the superintendent provides a detailed and specific response to the grievance rather than a pro forma denial; or (3) the grievance involves an ongoing violation "such that the 'supervisory official who reviews the grievance can remedy it directly.'" *Id*. (quoting *Vega v. Artus*, 610 F. Supp. 2d 185, 198 (N.D.N.Y. 2009)) (punctuation omitted).

Here, Plaintiff has not alleged facts plausibly suggesting Defendant Graham's personal involvement under either of the first two theories. The operative complaint does not allege that Defendant Graham investigated the situation or provided Plaintiff with a detailed and specific response. The operative complaint alleges that Plaintiff filed a grievance regarding the tobacco smoke, that he appealed its rejection to Defendant Graham, and that he then appealed to CORC. (Dkt. No. 11 at 3.) The operative complaint does not explicitly state that the grievance was denied at the Superintendent's level, although that fact can be inferred from the fact that Plaintiff appealed to CORC. It does not explicitly state whether Defendant Graham personally responded to that grievance or delegated it to another officer. Plaintiff alleges that he filed a grievance regarding the feces and mold, which he "appealed to Albany." *Id*. However, the complaint does not explicitly state that the grievance was denied at the Superintendent's level, much less that Defendant Graham personally denied it.

The operative complaint does, however, allege facts plausibly suggesting that Plaintiff's grievances involved ongoing problems. Plaintiff alleges that he has been exposed to high levels of indoor smoke for "several years." (Dkt. No. 11 at 2.) Plaintiff alleges that he has been exposed to bird feces and mold since July 2011. *Id*. at 3. Thus, the operative complaint

7

sufficiently alleges that Defendant Graham was personally involved because it alleges that Plaintiff filed grievances regarding alleged ongoing violations that Defendant Graham could have remedied directly. Therefore, I recommend that the Court deny Defendant Graham's motion to dismiss (Dkt. No. 31).

B.  **Defendant Fischer**

Defendant Fischer moves to dismiss the claims against him. (Dkt. No. 20.) Defendant Fischer argues that Plaintiff "has failed to allege any facts whatsoever that Defendant Fischer was personally involved in the alleged constitutional violations." (Dkt. No. 20-1 at 4.)[4] Defendant Fischer is correct. The operative complaint does not explicitly allege any actions or inactions by Defendant Fischer. (Dkt. No. 11.) Indeed, the operative complaint does not mention Defendant Fischer at all other than in the caption and in the list of parties. *Id*. at 1-2. Moreover, it does not allege any facts plausibly suggesting that any of the *Colon* categories apply. Therefore, I recommend that the Court dismiss the complaint as to Defendant Fischer.

Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). Here, Plaintiff argues in response to the motion to dismiss that Defendant Fischer "does in fact receive a monthly report from [Auburn Correctional Facility] concerning security, recreation and administration functions, which must include" issues such as the conditions alleged by Plaintiff. (Dkt. No. 30 at 3-4.) Plaintiff's use

---

[4] References to page numbers in citations to Defendant Fischer's Memorandum of Law refer to the page numbers in the original document.

of the phrase "which must include" indicates that Plaintiff is merely speculating that Defendant Fischer had notice of the alleged conditions.  However, given the special solicitude that the Court must extend to pro se civil rights litigants, I recommend that the Court grant Plaintiff leave to amend the complaint as to Defendant Fischer.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendant Fischer's motion to dismiss for failure to state a claim (Dkt. No. 20 ) be **GRANTED** with leave to amend; and it is further

**RECOMMENDED** that Defendant Graham's motion to dismiss for failure to state a claim (Dkt. No. 31) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: October 17, 2012
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge